**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT EVANS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MH SUB I, LLC, a Delaware Corporation, and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 3:26-cv-02684-VC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Hearing Date: July 16, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 4 – 17th Floor<br><br>Hon. Vince Chhabria |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 1

III. ARGUMENT ........ 2

A. Plaintiff's CIPA Claims Are Plausibly Alleged and Do Not Fail for Lack of Key Elements ........ 2

1. The FAC States a Valid Claim Under CIPA Section 631. ........ 2

2. The FAC States a Valid Claim Under CIPA Section 638.51. ........ 7

B. The ECPA Claim Does Not Fail Merely Because Internet Brands Claims It Was a Party to the Communications ........ 10

C. The CDAFA Claim Does Not Fail for Lack of Alleged Damage or Loss to a Computer, Network, Program, or Data. ........ 11

D. Plaintiff States a Valid Invasion of Privacy Claim. ........ 12

1. The FAC Identifies a Legally Protected Privacy Interest. ........ 12

2. Plaintiff Had a Reasonable Expectation of Privacy on the Website. ........ 12

3. Plaintiff Alleges a Serious or Highly Offensive Intrusion. ........ 13

4. Plaintiff Pleads Loss of Money or Property to Support a Valid UCL Claim. ........ 14

5. At Minimum, Plaintiff Should Receive Leave to Amend. ........ 15

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

Cases

*Ambriz v. Google, LLC,* No. 23-cv-05437-RFL, 2025 WL 830450, at 2–3 (N.D. Cal. Feb. 10, 2025)........ 5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........ 2

*B.K. v. Eisenhower Med. Ctr., 721 F. Supp. 3d 1056, 1064-66 (C.D. Cal. 2024)* ........ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ........ 2

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-59 (9th Cir. 2022) ........ 6, 13

*Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1075–80 (N.D. Cal. 2021) ........ 11

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) ........ 2

*Casillas v. Transitions Optical, Inc.,* No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024)........ 9

*Cody v. Ring LLC,* 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024*)*........ 5

*Deteresa v. ABC*, 121 F.3d 460, 467 (9th Cir. 1997)........ 10

*Doe v. Eating Recovery Ctr.,* 806 F. Supp. 3d 1109, 1118-19 (N.D. Cal. 2025*)*........ 5

*Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064, 1072-76 (N.D. Cal. 2023)........ passim

*Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051–52 (9th Cir. 2003)........ 15

*Flanagan v. Flanagan*, 27 Cal. 4th 766 at 775-76, 781 (2002) ........ 8

*Foman v. Davis,* 371 U.S. 178, 182 (1962)........ 15

*Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023) ........ 3, 8

*Harris v. iHeartMedia, Inc.*, No. 25-CV-6038-EKL, 2026 WL 247875, at 2-3 (N.D. Cal. Jan. 29, 2026)........ 8

*Heiting v. Taro Pharms. USA, Inc.,* 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023*)* ........ 5

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295–97 (2009)........ 12

*Hill v. NCAA*, 7 Cal. 4th 1, 35–37, 39–40 (1994) ........ 12

In re Facebook Internet Tracking Litig., 956 F.3d 589, 607(2020) ........ 5, 12, 14, 15

*In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 830–31 (N.D. Cal. 2020)........ 11

*In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013) ........ 3

*In re Zynga Priv. Litig.,* 750 F.3d 1098, 1106-07 (9th Cir. 2014) ........ 4, 8

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023) ........................................... 8

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1-2 (9th Cir. May 31, 2022) 3

*Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998-1003 (9th Cir. 2018) .................... 6, 7, 13

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Javier*, 2022 WL 1744107, at *1-2 .................................................................................................... 3, 11

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323–24 (2011) ................................................ 15

*Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) ............................................. 6, 13

*Lewis v. Superior Court*, 3 Cal. 5th 561, 569-70, 576-77 (2017) ................................................. 12

*Long v. Provide Commerce, Inc.,* 245 Cal. App. 4th 855, 862-65 (2016) ................................ 6, 13

*Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) .................................................................................................... 8

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ...................... 2, 14

*Mikulsky v. Bloomingdale's, LLC,* No. 24-95, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025).. 5

*Mirmalek v. Los Angeles Times Commc'ns LLC,* No. 24-CV-01797-CRB, 2024 WL 5102709, at *3-5 (N.D. Cal. Dec. 12, 2024) .................................................................................. 8

*Nelson v. Reddit, Inc.*, No. 25-CV-1470 JLS (AHG), 2026 WL 445627, at *3–7 (S.D. Cal. Feb. 17, 2026) .................................................................................................... 9

*Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1178-79 (9th Cir. 2014) ................................ 6, 13

*Ribas v. Clark,* 38 Cal. 3d 355, 359-62 (1985) .......................................................................... 3, 5

*Riganian v. LiveRamp Holdings, Inc.,* 2025 WL 2021802, at 1092–94 (N.D. Cal. July 18, 2025).. 8

*Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Ct. Oct. 2, 2024) .................................................................................................... 9

Saleh v. Nike, Inc., 562 F. Supp. 3d 503, 519 (C.D. Cal. 2021) ...................................................... 5

*Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025) .................................................................................................... 9

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401–02 (9th Cir. 1986) ....... 15

*Semien v. PubMatic Inc.,* No. 25-CV-3164-SI, 2026 WL 216333, at *10-11 (N.D. Cal. Jan. 27, 2026) .................................................................................................... 8

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-31 (N.D. Cal. 2024) ....................................... 3, 8

*Smith v. Rack Room Shoes, Inc.,* No. 24-cv-06709-RFL, 2025 WL 1085169, at 3–5 (N.D. Cal. Apr. 4, 2025) .................................................................................................... 5, 10

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ...................................................... 2, 7, 13, 14

*Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) .......... 10

*Valenzuela v. Keurig Green Mountain, Inc.,* 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023*)* .......... 5

**Statutes**

18 U.S.C. Section 2511 .......... 11, 12

18 U.S.C. Section 2511(2)(d) .......... 11, 12

637.2(a)(1) .......... 8

638.51(a) .......... 8

Cal. Penal Code §§ 638.50(b) .......... 8

## I. INTRODUCTION

This case concerns Defendant's alleged interception and disclosure of a person's private search for legal help. Plaintiff alleges that he visited Defendant's FindLaw website to research a landlord-tenant dispute, including searches for "keeping deposit from landlord in bad faith" and "civil law 1950.5," and that Defendant's website immediately deployed third-party trackers before any meaningful consent mechanism appeared. Those trackers allegedly identified Plaintiff's device, monitored his activity, recorded his interactions with legal-content pages, and transmitted his legal-research data to outside advertising networks, social media companies, and other third-party tracking operators.

The First Amended Complaint does not rest on "speculative assertions" or "conclusory statements," as Defendant claims. It pleads a specific tracking architecture: approximately 95 third-party trackers, at least 40 cookies, 5 canvas-fingerprinting instances, Microsoft Clarity session-recording technology, Meta/Facebook Pixel events, and more than 100 third-party tracker requests on desktop and mobile. These tools allegedly collected and disclosed URLs, page views, legal search activity, timestamps, IP addresses, referrer information, browser and device characteristics, identifiers, mouse movements, clicks, scrolling behavior, and engagement data—information that, in context, revealed the substance, meaning, and sensitivity of users' legal inquiries.

Defendant's motion asks the Court to dismiss these detailed allegations as nothing more than "routine, lawful practices," and to resolve fact-bound issues—whether information was captured in transit, whether Defendant or third parties intercepted the communications, whether consent existed, whether the trackers functioned as pen registers, whether Plaintiff suffered damage or loss, whether he had a reasonable expectation of privacy, whether the intrusion was highly offensive, and whether he lost money or property—against Plaintiff at the pleading stage. Rule 12(b)(6) does not permit that result. The FAC plausibly alleges violations of CIPA, the Wiretap Act, Penal Code section 502, the California Constitution's privacy guarantee, and the UCL. The motion should be denied.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party; dismissal is

improper unless the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations or heightened fact pleading of specifics, but it must allege enough factual matter, taken as true, to raise the right to relief above the speculative level and state a claim to relief that is plausible on its face; the plausibility standard is not akin to a probability requirement, but requires more than a sheer possibility that a defendant acted unlawfully. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where Plaintiff's explanation is plausible, dismissal is improper even if Defendant offers another plausible explanation. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Thus, disputed issues of timing, consent, technical operation, third-party participation, and the meaning of captured data cannot be resolved on the pleadings. Plaintiff need only give fair notice of the claims and grounds; the evidentiary trail is for discovery. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## III. ARGUMENT

### A. Plaintiff's CIPA Claims Are Plausibly Alleged and Do Not Fail for Lack of Key Elements

#### 1. The FAC States a Valid Claim Under CIPA Section 631.

##### a. Plaintiff Plausibly Alleges In-Transit Capture of Information.

The FAC alleges that FindLaw's legal-search page ran a pre-consent third-party tracking stack: 95 trackers, including 41 cookies, five canvas-fingerprinting instances, Clarity session replay, Meta Pixel, Google Ads/DoubleClick, Google Analytics, Google Tag Manager, and Microsoft Advertising. FAC ¶¶ 44-68, 72-78, 97-110, 127-151. It alleges no banner or pop-up opt-out, page-load firing, real-time transmissions to Meta, Google, and Microsoft, and local-storage capture of "landlord deposit hold back bad faith." FAC ¶¶ 61-68, 76-78, 97-110, 127-151. FindLaw's embedded code sent URLs, timestamps, IP addresses, user-agent strings, referrer data, cookie and local-storage identifiers, fingerprints, clicks, scrolling, and session data to outside ad/tracking vendors for retargeting, audience creation, ad-delivery optimization, analytics, and cross-site profiling. FAC ¶¶ 45-67, 74-80, 101-107, 127-154. These allegations are sufficient at the pleading

stage because § 631(a) applies to Internet communications and requires prior consent before recording; embedded software that identifies users, gathers data, and correlates it through fingerprinting may constitute a CIPA 'process'; and third-party website trackers installed through embedded code that transmit IP/cookie data to outside advertising or analytics vendors without consent plausibly state CIPA claims. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1-2 (9th Cir. May 31, 2022); *Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-31 (N.D. Cal. 2024).

Defendant cannot defeat those allegations by substituting its own technical narrative. The FAC alleges that the stack intercepted sensitive legal-research communications in real time, qualifies under Section 638.51 Section 631 also reaches internet communications and surreptitious third-party monitoring, not merely copper-wire telephone tapping; and generic or after-the-fact website policies do not defeat a claim absent valid prior consent. *Javier,* 2022 WL 1744107, at *1-2*; In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013). Its core concern is secret third-party eavesdropping. *Ribas v. Clark,* 38 Cal. 3d 355, 359-62 (1985). The FAC also alleges contemporaneous acquisition: page-load firing, real-time transmissions to Meta, Google, and Microsoft, and Clarity recording Evans's session as he navigated legal information. FAC ¶¶ 45-48, 50-57, 61-68, 74-80. Such real-time website capture satisfies the contemporaneous-acquisition requirement and fits *Javier's* recognition that real-time recording of website interactions can support a Section 631(a) claim. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Javier*, 2022 WL 1744107, at *1-2.

The reason why the FAC is so detailed is that Plaintiff undertook the services of an expert to review Defendant's website. This report is attached to the Declaration of James M. Treglio, filed herewith, and is being produced to demonstrate to the Court that, in the event the Court finds the FAC is insufficient, that Plaintiff would be able to amend. The Cutchin pre-consent desktop expert reports confirm a real tracking stack, not labels. The February 6, 2026 homepage scan detected 41 cookies, 95 third-party trackers across 33 domains, five canvas-fingerprinting instances, Microsoft Clarity session recording, a Meta/Facebook Pixel event, and one key-logging instance. The legal-search-page scan—run on the FindLaw URL containing "landlord deposit hold back bad faith"—

detected 41 cookies, 102 third-party trackers across 35 domains, five canvas-fingerprinting instances, Microsoft Clarity, Meta Pixel, five local-storage items, and two session-storage items. See Treglio Decl. Ex. A, Cutchin Homepage Report at 1-5, 13-16, 23; id. Ex. B, Cutchin Search-Page Report at 1-4, 12-13, 18-19, 42. The counts are consistent because they reflect different scans. The FAC likewise pleads page- and device-specific counts, including 95 third-party trackers in general forensic testing, and 102 desktop and 105 mobile third-party tracker requests in the pre-consent legal-search investigations, with 40–41 cookies, five canvas-fingerprinting instances, one session recorder, and one Meta/Facebook Pixel PageView event.

For Section 631 and the Wiretap Act, the search-page report is especially probative: it shows the exact legal-search phrase stored in local storage under recentSearches, transmitted in a Cludo query-log request, embedded in a third-party ContextWeb request, and captured in a Microsoft Clarity session-recording environment. Id. Ex. B, Cutchin Search-Page Report at 3-15, 33, 39-41.

These technical findings directly answer Defendant's "conclusory pleading," "no contents," and "first-party analytics" arguments. They show contemporaneous collection of addressing data, browser and device identifiers, session behavior, and the substance of Plaintiff's legal research, along with disclosure to third-party advertising and analytics ecosystems. That is sufficient at the pleading stage under *Twombly, Iqbal, Greenley, Shah, In re Zynga, and Doe v. Meta.*

Further, under *Zynga*, the FAC plausibly alleges interception of "contents" because it pleads capture of Evans's legal-search query, not merely routing or record data. *In re Zynga Priv. Litig.,* 750 F.3d 1098, 1106-07 (9th Cir. 2014). Evans alleges capture of search-related legal activity, specific legal-content pages visited, page content viewed, cursor movements, clicks, and scrolling tied to legal research, typed, edited, and deleted input, and storage of a legal-search phrase in local storage. FAC ¶¶ 46-48, 52, 56-57, 61-67, 83-84, 97-105, 129-154. That plausibly reveals the substance and meaning of Evans's legal research because website interactions are communications under Section 631, and courts have treated descriptive URLs, page-content signals, and real-time session-replay capture as sufficient at the pleading stage when they reveal the contents or meaning of a user's communications. *Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064, 1072-76 (N.D. Cal.

2023); *Mikulsky v. Bloomingdale's, LLC,* No. 24-95, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025).

Defendant's contrary "conclusory pleading" cases are distinguishable on the facts alleged here. Cases like *Cody v. Ring LLC,* 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024*), Valenzuela v. Keurig Green Mountain, Inc.,* 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023*), Heiting v. Taro Pharms. USA, Inc.,* 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023*), and Doe v. Eating Recovery Ctr.,* 806 F. Supp. 3d 1109, 1118-19 (N.D. Cal. 2025*)*, involved materially thinner pleadings or different statutory theories. Evans does not merely repeat the words "intercept" or "real time." He pleads specific vendors, specific tools, specific identifiers, specific advertising uses, specific sensitive search topics, specific page-load timing, specific no-banner allegations, and specific storage and transmission mechanisms. FAC ¶¶ 45-68, 74-80, 97-110, 127-154.

**b. Defendant Was Not Merely a Party to the Communications.**

The "party to the communication" cases are distinguishable on the FAC's pleaded theory. Defendant's reliance on *In re Facebook Internet Tracking Litig.,* 956 F.3d 589, 607 (2020), *Saleh v. Nike, Inc.,* 562 F. Supp. 3d 503, 519 (C.D. Cal. 2021), *or B.K. v. Eisenhower Med. Ctr.,* 721 F. Supp. 3d 1056, 1064-66 (C.D. Cal. 2024*)* fails: *In re Facebook* rejects immunity for secret third-party duplication, *Saleh* permits liability for enabling a vendor's third-party session recording, and *B.K.* turned on sparse allegations and an intended-recipient theory unlike Evans's detailed allegations of independent ad-tech tracking. That places Plaintiff within *Ribas*'s secret-auditor principle, *Javier*'s pre-consent internet-recording rule, and *Doe v. Meta*'s Pixel-based interception theory. *Ambriz v. Google, LLC,* No. 23-cv-05437-RFL, 2025 WL 830450, at 2–3 (N.D. Cal. Feb. 10, 2025), *and Smith v. Rack Room Shoes, Inc.,* No. 24-cv-06709-RFL, 2025 WL 1085169, at 3–5 (N.D. Cal. Apr. 4, 2025)*,* further support treating embedded tracking vendors as independent third-party eavesdroppers—not mere service extensions—where, as alleged here, they have the capability or contractual/data-use right to exploit intercepted data for their own commercial purposes.

**c. Consent Presents a Fact Dispute That Cannot Be Resolved on a Motion to Dismiss.**

Consent is also a fact dispute here, and the FAC pleads no prior consent. Evans alleges that the trackers fired immediately on page load, that the site presented no consent banner or pop-up opt-

out, and that neither he nor the class gave prior consent before installation or use. FAC ¶¶ 61, 76-78, 109-110, 127, 137, 149-151. On a motion to dismiss, those allegations must be accepted as true. *Iqbal*, 556 U.S. at 678. Online consent ordinarily turns on reasonably conspicuous notice and unambiguous assent, not on post hoc defense characterizations. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-59 (9th Cir. 2022); *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1178-79 (9th Cir. 2014).

Website policies and public webpages do not defeat pleading-stage allegations of pre-consent tracking. Judicial notice and incorporation by reference do not permit the Court to accept disputed policy facts as true. Courts may notice the existence of a webpage, but not the truth of disputed assertions embedded in it. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998-1003 (9th Cir. 2018). Thus, even if the Court notices FindLaw's Terms, Privacy Policy, or Cookie Policy, it cannot use them to override Evans's allegations about timing, scope, conspicuousness, assent, or the actual operation of the trackers. *Khoja*, 899 F.3d at 1002-03.

Hyperlinked policies also do not establish consent as a matter of law. Absent proof of actual knowledge, passive online terms are unenforceable unless defendants show conspicuous notice and an explicit act unambiguously manifesting assent. *Nguyen,* 763 F.3d at 1178-79; *Berman*, 30 F.4th at 856-57, 866-67; *Long v. Provide Commerce, Inc.,* 245 Cal. App. 4th 855, 862-65 (2016). Evans alleges the exact opposite of effective assent: no banner, no granular controls, immediate page-load firing, and no meaningful opportunity to choose before tracking began. FAC ¶¶ 45, 56, 61, 64, 76-78, 109, 127, 137, 149-151.

Generic policies do not negate specific allegations of undisclosed, pre-consent, third-party tracking on sensitive legal pages. Defendant's motion relies on public webpages and policies to argue notice and offensiveness. MTD 20-21. But those materials, even on their face, do not establish that Evans saw them, assented to them, or was told that FindLaw would store a sensitive legal-search phrase in local storage, deploy five canvas fingerprints, run Microsoft Clarity session replay, or transmit legal-research activity to Meta, Google, and Microsoft before consent. FAC ¶¶ 45-68, 97-

110, 127-154. In the directly analogous Nelson tracker case, the court denied the request for judicial notice as moot and did not rely on the website materials in rejecting the same core pleading defenses.

At most, the policies create a factual dispute that cannot be resolved on a Rule 12(b)(6) motion. At the pleading stage, Evans's allegations that Defendants tracked her without conspicuous pre-tracking disclosures or informed assent to the challenged practices must be credited, and Defendants cannot use website policies to resolve those factual disputes in their favor. *Starr*, 652 F.3d at 1216–17; *Khoja*, 899 F.3d at 1002–03, 1014–15. The Court should therefore reject any invitation to use public webpages to erase the FAC's pre-consent tracking allegations at the pleadings stage.

**d. Plaintiff Pleads Conduct Sufficient to Support Scienter and Aiding-and-Abetting Liability.**

The FAC does not allege accidental, passive, or merely incidental tracking. It alleges that FindLaw knowingly embedded third-party code that executed on page load, transmitted data to outside advertising and analytics entities in real time, and was used for retargeting, audience creation, ad-delivery optimization, analytics, and cross-site profiling. FAC ¶¶ 45-67, 74-80, 101-107, 127-154; id. ¶¶ 52, 58-63, 75, 79-80, 107, 147-154.

That pleaded architecture—specific vendors, tools, identifiers, advertising uses, sensitive search topics, page-load timing, no-banner allegations, and storage/transmission mechanisms—plausibly supports scienter, aiding and abetting, and the Section 631 theory because it alleges secret third-party eavesdropping and use by outside ad-tech actors, not ordinary first-party receipt. FAC ¶¶ 45-68, 74-80, 97-110, 127-154.

**2. The FAC States a Valid Claim Under CIPA Section 638.51.**

The FAC states a claim under CIPA Section 638.51 because the embedded tracker processes plausibly function as pen registers and were allegedly installed and used without prior consent or court order. The pleaded elements are straightforward and satisfied. Section 638.51 bars installation or use of a pen register without first obtaining user consent or a court order. Cal. Penal Code §§ 638.50(b), 638.51(a), 637.2(a)(1). Evans pleads both no prior consent and no court order. FAC ¶¶ 61, 76-78, 85-94, 109-110, 137-139. California privacy statutes should be read to protect privacy

interests broadly, not grudgingly. *Flanagan v. Flanagan*, 27 Cal. 4th 766 at 775-76, 781 (2002); *Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

Software trackers and fingerprinting scripts plausibly qualify as a 'device or process' under Section 638.50(b): *Greenley* held that software identifying consumers, gathering data, and correlating it through unique fingerprinting can be a 'process,' *James* supports the related proposition that software can constitute a 'device' in analogous electronic-surveillance statutes, and recent Section 638.51 website-tracking decisions likewise treat trackers, pixels, client-side tags, JavaScript, and SDK functionality as potential pen registers. *Greenley*, 684 F. Supp. 3d at 1050–51; *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023); *Shah*, 754 F. Supp. 3d at 928–33; *Mirmalek v. Los Angeles Times Commc'ns LLC,* No. 24-CV-01797-CRB, 2024 WL 5102709, at *3-5 (N.D. Cal. Dec. 12, 2024); *Riganian v. LiveRamp Holdings, Inc.,* 2025 WL 2021802, at 1092–94 (N.D. Cal. July 18, 2025); *Semien v. PubMatic Inc.,* No. 25-CV-3164-SI, 2026 WL 216333, at *10-11 (N.D. Cal. Jan. 27, 2026).

The FAC pleads collection of addressing, routing, and signaling information, not just content. The Ninth Circuit has already recognized that IP addresses constitute addressing information. *In re Zynga*, 750 F.3d at 1108. Evans alleges not only IP addresses, but also cookie identifiers, advertising identifiers, local-storage identifiers, device and browser fingerprints, referrer data, and session identifiers tied to HTTP requests and page activity. FAC ¶¶ 51-54, 61-68, 91-94, 128-151. That is stronger than the allegations already held sufficient in *Shah* and *Mirmalek*. Courts have also rejected the argument that Section 638.50(b) applies only to recipient-addressing information or to data captured in the manner of a traditional telephone pen register, holding that the statute may reach trackers that record addressing information transmitted by a user's device in connection with an outgoing HTTP request, regardless of whether that information pertains to the sender or recipient. *Shah*, 754 F. Supp. 3d at 929-31; *Harris v. iHeartMedia, Inc.*, No. 25-CV-6038-EKL, 2026 WL 247875, at 2-3 (N.D. Cal. Jan. 29, 2026).

The expert reports also corroborate the Section 638.51 theory. For Section 638.51, they identify IP/geolocation data, unique identifiers, cookies, device and browser information, and

canvas-fingerprinting scripts tied to Google, Adobe, Microsoft/Bing, Clarity, DoubleClick, Meta, and other ad and analytics domains. See Treglio Decl. Ex. A, Cutchin Homepage Report at 1-5, 13-16, 23; id. Ex. B, Cutchin Search-Page Report at 1-4, 12-13, 18-19, 42.

Defendant's reliance on uncitable superior court cases is misplaced *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025), *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Ct. Oct. 2, 2024), and *Casillas v. Transitions Optical, Inc.,* No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024), largely involved far thinner allegations centered on bare IP collection or adopted a narrow reading that recent federal courts have rejected. Evans alleges a far richer stack: 95 third-party trackers, five canvas fingerprints, local-storage capture of a legal-search phrase, and page-load firing to Meta, Google, and Microsoft without prior consent. FAC ¶¶ 44-68, 97-110, 127-154.

*Nelson v. Reddit, Inc.* rejects the core Section 638.51 defenses Internet Brands raises here, and Evans is materially stronger on the facts. *Nelson* rejected the same five core defenses Internet Brands presses here. The court rejected the arguments that a website-based tracker is not a pen register because it captures the "wrong" kind of addressing data, that Section 638.51 requires a substantive-content communication, that the site is exempt as a party to the communication, that Section 638.51 covers only person-to-person communications, and that lenity requires dismissal. *Nelson v. Reddit, Inc.*, No. 25-CV-1470 JLS (AHG), 2026 WL 445627, at *3–7 (S.D. Cal. Feb. 17, 2026). On the first issue, *Nelson* held it was enough that the tracker recorded addressing information transmitted in connection with the outgoing HTTP request, "regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Id.* at *4.

*Nelson* also rejects the "party/user" and "direct liability" defenses. *Id.* at *5–6. The court held that Reddit was not exempt merely because users were "communicat[ing] with" the site, because the theory was that Reddit embedded third-party trackers that recorded and transmitted identifying information to outside entities for profiling and advertising purposes. *Id.* at *5. That tracks Evans exactly: the FAC pleads that FindLaw caused Meta, Google, and Microsoft code to run and transmit data for retargeting, audience creation, ad optimization, analytics, and cross-site profiling. FAC ¶¶ 52, 56–63, 74–80, 107, 127–154; see *Nelson*, 2026 WL 445627, at *5–6.

Plaintiff's allegations are materially stronger than *Nelson* on the facts. The *Nelson* complaint centered on one LiveRamp tracker, IP-address capture, and cookie persistence for ad delivery. Evans alleges much more: multiple ad networks, five canvas-fingerprinting instances, Microsoft Clarity session replay, Meta Pixel, Google Ads/DoubleClick/Analytics/Tag Manager, local storage retention of a sensitive legal search phrase, no consent banner, real-time transmission to three major outside advertising ecosystems, and post-visit targeted ads tied to the researched legal topic. FAC ¶¶ 45-68, 97-110, 127-154. If *Nelson* survived, Plaintiff's FAC should too *a fortiori*.

Nor do the reports establish consent. They are pre-consent scans and note that policy compliance, opt-out availability, and cookie-banner functionality require manual verification. See Treglio Decl. Ex. A, Cutchin Homepage Report at 22-24; id. Ex. B, Cutchin Search-Page Report at 17-19. At minimum, the reports show that any perceived pleading deficiency is curable, making dismissal with prejudice improper.

### B. The ECPA Claim Does Not Fail Merely Because Internet Brands Claims It Was a Party to the Communications

The one-party-consent proviso does not bar a plausible claim where the interception is undertaken for a separate criminal or tortious purpose. Section 2511(2)(d) does not immunize an interception undertaken "for the purpose of committing any criminal or tortious act." 18 U.S.C. Section 2511(2)(d). The Ninth Circuit's cases require a purpose separate from the interception itself. *Deteresa v. ABC*, 121 F.3d 460, 467 (9th Cir. 1997); *Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999). Plaintiff pleads that the tracking was undertaken for downstream profiling, retargeting, audience creation, ad measurement, optimization, monetization, and independent violations of CIPA, CDAFA, and the California Constitution, not merely to receive the communication. FAC ¶¶ 52, 58-63, 75, 79-80, 107, 145-156. That adequately alleges a separate illicit purpose. Courts in similar tracker cases have allowed that theory to proceed. *Doe*, 690 F. Supp. 3d at 1077-79; *Smith*, 2025 WL 1085169, at *4-5.

The FAC states a claim under the Wiretap Act because Defendant allegedly intercepted, disclosed, and used communications and, in any event, the party-consent proviso does not bar

interceptions undertaken for the separate purpose of downstream profiling, retargeting, audience creation, and monetization.

The FAC pleads all three operative theories under 18 U.S.C. Section 2511. It alleges interception, disclosure, and use of electronic communications and their contents. FAC ¶¶ 79-84, 145-156. That tracks the statutory text in 18 U.S.C. Section 2511(1)(a), (c), and (d). The alleged contents are the same sensitive legal research signals discussed above.

The FAC also plausibly alleges contemporaneous interception. Evans pleads that the code executed on page load and transmitted session, behavioral, URL, and identifier data to outside entities while he was using FindLaw. FAC ¶¶ 45-48, 56-67, 74-80, 98-105, 147-154. That is enough at the pleading stage. *Konop*, 302 F.3d at 878.

### C. The CDAFA Claim Does Not Fail for Lack of Alleged Damage or Loss to a Computer, Network, Program, or Data.

CDAFA is adequately pleaded because the FAC alleges unauthorized installation, access, taking, use, alteration, and enabling third-party access to browser resident data and software. Evans pleads violations of Section 502(c)(1), (2), (4), (6), and (7), based on installation of trackers on users' browsers, adding or altering data and software, taking and using data, and providing trackers means of access, plus damages and unjust enrichment. FAC ¶¶ 158-177. That tracks the statute's text. Cal. Penal Code Section 502(c), (e)(1)-(2).

Courts have allowed claims challenging *Google*'s surreptitious collection of sensitive user data to proceed and recognized that unauthorized recording or disclosure presents fact-intensive privacy harms. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1075–80 (N.D. Cal. 2021); see also *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 830–31 (N.D. Cal. 2020). Defendant's cases do not foreclose Plaintiff's § 502 claim: *Claridge*, *Pratt*, and *Heiting* involved materially different theories, and *Doe* rejected cookie allegations lacking measurable device impairment—not allegations that Defendant affirmatively deployed third-party code on Plaintiff's own device to capture data and cause cognizable device-based loss.

The FAC therefore does not merely allege an abstract statutory violation. It alleges installation of trackers on users' browsers, alteration or addition of browser-resident data and software, taking and use of data, and providing third-party trackers means of access, together with damages and unjust enrichment. FAC ¶¶ 158-177. That is sufficient at the pleading stage.

**D. Plaintiff States a Valid Invasion of Privacy Claim.**

**1. The FAC Identifies a Legally Protected Privacy Interest.**

Plaintiff states a California constitutional privacy claim because he alleges the *Hill* elements—an informational-privacy interest, a reasonable expectation of privacy, and a serious invasion—and *Hernandez* confirms that seriousness/offensiveness turns on the degree, setting, and circumstances of the intrusion. *Hill v. NCAA*, 7 Cal. 4th 1, 35–37, 39–40 (1994); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295–97 (2009).

The Ninth Circuit held that surreptitious tracking of users' detailed browsing histories tied to user identifiers plausibly invades a legally protected privacy interest and states a highly offensive intrusion. *In re Facebook Internet Tracking Litig.*, 956 F.3d at 598–99, 601–06. California law likewise recognizes informational-privacy interests in preventing improper access, use, or disclosure of personal information, although such interests may yield to sufficient countervailing interests. *Lewis v. Superior Court*, 3 Cal. 5th 561, 569-70, 576-77 (2017); id. at 581-82.

The sensitivity of the subject matter further strengthens plausibility and offensiveness. Far from mere technical metadata, the alleged capture of Plaintiff's FindLaw browsing and search-related activity plausibly revealed the substance of his private legal research because courts recognize that full-string URLs, browsing histories, and search-term data can expose a user's sensitive queries, interests, habits, and confidential concerns. *In re Facebook*, 956 F.3d at 601–06; *Doe v. Meta Platforms*, 690 F. Supp. 3d at 1076–77.

**2. Plaintiff Had a Reasonable Expectation of Privacy on the Website.**

Plaintiff had a reasonable expectation of privacy because the FAC alleges pre-consent tracking on a legal-research website, no cookie banner or pop-up opt-out, no meaningful opportunity to choose before tracking began, and immediate page-load transmission of sensitive legal-research

activity to third-party advertising and analytics ecosystems. FAC ¶¶ 45, 56, 61, 64, 76-78, 97-110, 127, 137, 149-151.

Defendant's reliance on public-facing website policies does not defeat that expectation for the same reasons addressed above. At the pleading stage, Defendants cannot use judicial notice or incorporation by reference to transform extrinsic materials into disputed-fact findings that defeat Plaintiff's well-pleaded allegations. *Lee*, 250 F.3d at 689-90; *Khoja*, 899 F.3d at 998-1003, 1014-15. Nor do hyperlinked terms or policies, standing alone, bind a user absent reasonably conspicuous notice of the terms and an action unambiguously manifesting assent to them. *Nguyen*, 763 F.3d at 1178–79; *Berman*, 30 F.4th at 856–58; *Long*, 245 Cal. App. 4th at 862–67. Evans alleges no banner or granular controls, immediate page-load firing, and no meaningful opportunity to choose before tracking began. FAC ¶¶ 45, 56, 61, 64, 76-78, 109, 127, 137, 149-151. Defendant's policies, at most, create fact-bound disputes—not a basis for dismissal—because Rule 12(b)(6) requires crediting Plaintiff's plausible allegations and forbids resolving disputed facts or competing inferences through extrinsic materials. *Starr*, 652 F.3d at 1216–17; *Khoja*, 899 F.3d at 1002–03.

**3. Plaintiff Alleges a Serious or Highly Offensive Intrusion.**

The FAC alleges a serious and highly offensive intrusion because the tracking occurred on a legal-research website and allegedly captured sensitive legal-search activity, including the legal-search phrase "landlord deposit hold back bad faith," page activity, identifiers, and session behavior. FAC ¶¶ 48, 52, 57, 61-68, 97-110, 127-154, 179-186. This is not generic website analytics. Evans alleges a pre-consent, real-time, third-party advertising and analytics stack operating in the context of legal research.

The alleged tracking stack included 95 third-party trackers, 41 cookies, five canvas-fingerprinting instances, Microsoft Clarity session replay, Meta Pixel, Google Ads/DoubleClick, Google Analytics, Google Tag Manager, and Microsoft Advertising. FAC ¶¶ 44-68, 72-78, 97-110, 127-151. The Cutchin reports corroborate that architecture, including the legal-search-page scan showing 102 third-party trackers across 35 domains, five canvas-fingerprinting instances, Microsoft Clarity, Meta Pixel, five local-storage items, and two session-storage items. See Treglio Decl. Ex. B, Cutchin Search-Page Report at 1-4, 12-13, 18-19, 42.

The seriousness and offensiveness of the alleged intrusion are strengthened by the nature of the information. Evans alleges that the trackers captured search-related activity revealing his specific legal concern and transmitted legal-research activity to Meta, Google, and Microsoft for retargeting, audience creation, ad optimization, analytics, and cross-site profiling. FAC ¶¶ 52, 56-63, 74-80, 97-110, 127-154. Surreptitious tracking of detailed URLs, browsing histories, and search-term data can expose deeply private concerns and plausibly sustain Wiretap Act, CIPA, and well-pleaded privacy claims. *In re Facebook*, 956 F.3d at 601–08; *Doe*, 690 F. Supp. 3d at 1076–82.

Defendant's argument attacks on consent, notice, technical operation, and offensiveness cannot defeat Plaintiff's plausible allegations at the pleading stage. *Starr*, 652 F.3d at 1216–17; *Mendiondo*, 521 F.3d at 1104. The FAC plausibly alleges a serious intrusion into a legally protected privacy interest, and the privacy claim should proceed.

**4. Plaintiff Pleads Loss of Money or Property to Support a Valid UCL Claim.**

The UCL claim is adequately pleaded because unlawful predicates are pleaded and the FAC sufficiently alleges loss of money or property. If the CIPA, Wiretap Act, CDAFA, or constitutional privacy counts survive, the UCL's unlawful prong survives with them. Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999); FAC ¶¶ 188-193.

Independently, the UCL's unfair prong survives because the FAC alleges unfair conduct apart from any statutory violation: hidden, pre-consent tracking on a legal research website; capture of sensitive legal search activity and persistent identifiers; session replay and fingerprinting; and disclosure or monetization through third-party advertising networks before meaningful consent or opt-out. FAC ¶¶ 45–68, 74–78, 127–154, 188–193. These allegations plausibly describe an unfair business practice because the alleged privacy invasion and commercial exploitation of sensitive legal research data substantially outweigh any claimed utility.

Standing and loss are plausibly alleged because Defendant allegedly treated Plaintiff's data and communications as its own property, monetized the challenged tracking, and used the information for profit. FAC ¶¶ 175, 188-193. Plaintiff's injury is cognizable because the Ninth Circuit recognizes Article III injury where defendants misappropriate and monetize valuable browsing histories without authorization, and *Kwikset* confirms that any personal, nontrivial

economic loss caused by unfair conduct satisfies California standing. *In re Facebook Internet Tracking Litig.*, 956 F.3d at 599–601; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323–24 (2011). Those allegations are sufficient at the pleading stage.

**5. At Minimum, Plaintiff Should Receive Leave to Amend.**

Any insufficiency in particularity should be cured by amendment, not dismissal with prejudice, absent the strong showing required to overcome Rule 15's presumption in favor of leave. *Foman v. Davis,* 371 U.S. 178, 182 (1962)*; Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051–52 (9th Cir. 2003). Because Plaintiff's alleged defects are, at most, curable pleading deficiencies—not legal impossibilities—dismissal with prejudice is improper absent a finding that no consistent amendment could possibly cure them. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401–02 (9th Cir. 1986). If more detail is required, Plaintiff can amend to add cookie names and IDs, pixel/event payload fields, Clarity replay fields, fingerprinting scripts and outputs, consent-interface screenshots, and additional allegations about downstream disclosure, retargeting, audience creation, profiling, optimization, and monetization. The expert reports confirm curability by identifying a concrete tracking architecture: third-party trackers, cookies, canvas fingerprinting, Microsoft Clarity session recording, Meta Pixel activity, local-storage and session-storage items, legal-search phrase capture, and third-party ad-tech transmissions. See Treglio Decl. Ex. A, Cutchin Homepage Report at 1-5, 13-16, 22-24; 22-24; id. Ex. B, Cutchin Search-Page Report at 1-4, 12-19, 33, 39-42. Dismissal with prejudice would therefore be improper.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety. At a minimum, if the Court finds any allegation insufficient, Plaintiff should receive leave to amend because the FAC plausibly states each claim and any perceived deficiency can readily be cured.

Dated: June 1, 2026

**POTTER HANDY, LLP**

/s/ James M. Treglio
By: ______________________________
James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff