**FAEGRE DRINKER BIDDLE & REATH LLP**
PAUL A. ROSENTHAL (SBN 338994)
paul.rosenthal@faegredrinker.com
600 Campus Drive
Florham Park, New Jersey 07932
Telephone: +1 973 549 7000
Facsimile: +1 973 360 9831

JOIE C. HAND (SBN 342325)
joie.hand@faegredrinker.com
KAYLEE A. RACS (SBN 353919)
kaylee.racs@faegredrinker.com
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: +1 310 203 4000
Facsimile: +1 310 229 1285

Attorneys for Defendant
MH SUB I, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

SCOTT EVANS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MH SUB I, LLC, a Delaware corporation, and DOES 1-100, inclusive,

Defendants.

Case No. 3:26-cv-02684-VC

Judge Vince Chhabria

**DEFENDANT MH SUB I, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Hearing Date: July 16, 2026
Hearing Time: 10:00 a.m.
Courtroom: 4 – 17th Floor

Complaint filed: February 20, 2026
Date removed: March 26, 2026
FAC filed: April 22, 2026

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

- I. Plaintiff's CIPA Claims Are Insufficiently and Fatally Pled. ..... 2
  - A. Plaintiff's CIPA Section 631 Claim Must be Dismissed. ..... 2
    - 1. Plaintiff's Conclusory Allegations of In-Transit Interception are Insufficient. ..... 2
    - 2. Internet Brand Was a Party to the Communications. ..... 3
    - 3. Plaintiff's "Proposed Intent" Standard for Scienter Improperly Seeks to Expand the Scope of CIPA. ..... 4
  - B. Plaintiff's Interpretation of CIPA Section 638 is Unmoored from the Text. ..... 5
- II. Plaintiff's ECPA Claim is Barred by the Party Exception. ..... 7
- III. Plaintiff Does Not Allege a Valid Violation of CDAFA. ..... 8
- IV. Plaintiff's Invasion of Privacy Claim Does Not Satisfy Any of the Three Elements. ..... 9
  - A. Plaintiff Does Not Have a Protected Privacy Interest. ..... 9
  - B. There is No Reasonable Expectation of Privacy in Routine Online Behavior. ..... 10
  - C. Plaintiff Has Not Alleged Disclosure of Any Highly Offensive Information. ..... 11
- V. Plaintiff's Theory of Loss Under the UCL is Inconsistent with Precedent. ..... 13
- VI. Dismissal with Prejudice is Appropriate ..... 14

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir.1990) ... 14

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ... 3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ... 7

*Berman v. Freedom Financial Network, LLC*,
30 F. 4th 849 (9th Cir. 2022) ... 11

*Blaker v. NetScout Systems, Inc.*,
No. 25STCV31283 ... 6

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 9

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ... 2

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ... 13

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 7

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ... 5

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ... *passim*

*Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*,
330 F.3d 1214 (9th Cir. 2003) ... 5

*Esparza v. UAG Escondido A1, Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ... 4

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F. 3d 589 (9th Cir. 2020) ... 7, 10, 12, 14

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 3

*Hale v. Morgan*,
22 Cal. 3d 388 (1978) .......... 5

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001) .......... 5

*Holt v. Noble House Hotels & Resort, Ltd*,
370 F. Supp. 3d 1158 (S.D. Cal. 2019) .......... 5

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 3

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 11

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 3

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......... 13, 14

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 7

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 11

*Lewis v. Superior Court*,
3 Cal. 5th 561 (2017) .......... 10

*Long v. Provide Commerce, Inc.*,
245 Cal. App. 4th 855 (2016) .......... 11

*Lopez v. Bank of America, N.A.*,
505 F. Supp. 3d 961 (N.D. Cal. 2020) .......... 13

*Matthews v. Cnty. of Santa Cruz*,
2021 WL 949419 (N.D. Cal. Mar. 12, 2021) .......... 9

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 12

*In re Meta Android Privacy Litig.*,
2026 WL 1279416 (N.D. Cal. May 11, 2026) .......... 6

*Mikulsky v. Bloomingdale's, LLC*,
2025 WL 1718225 (9th Cir. June 20, 2025) .......... 3

*Namisnak v. Uber Techs., Inc.*,
444 F. Supp. 3d 1136 (N.D. Cal. 2020) .......... 4, 10

*Nelson v. Reddit, Inc.*,
2026 WL 445627 (S.D. Cal. Feb. 17, 2026) .......... 6

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 11

*Pena v. Gamestop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 7

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 5

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 7

*Schneider v. Cal. Dept. of Corrections*,
151 F.3d 1194 (9th Cir. 1998) .......... 7, 12

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 3

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 3, 8

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 4

*Sussman v. Am. Broadcasting Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 8

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 2

*Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*,
495 F. Supp. 3d 848 (C.D. Cal. 2020) .......... 4, 10

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023) .......... 4

*In re Wet Seal, Inc. Securities Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) .......... 14

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 3

**Statutes, Rules & Regulations**

Cal. Penal Code § 631 .......... 1, 2, 4, 5

Cal. Penal Code § 638 .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 2, 7, 14

Defendant MH Sub I, LLC d/b/a Internet Brands ("Internet Brands"), respectfully submits this Reply in further support of its May 18, 2026 Motion to Dismiss Plaintiff Scott Evans' First Amended Complaint (Dkt. 18, "Mtn."), and in response to the arguments presented in Plaintiff's June 1, 2026 Opposition (Dkt. 20, "Opp.").

**PRELIMINARY STATEMENT**

Each of Plaintiff's claims suffers from incurable legal deficiencies warranting dismissal. Plaintiff's Opposition affirms the errors highlighted by the Motion and cites a series of cases that only serve to confirm the errors of Plaintiff's First Amended Complaint ("FAC"). The Opposition invites error by asking the Court to expand the interpretation of CIPA Sections 631 and 638 beyond the plain language of the text and beyond the scope of its prior rulings on the same regulation. Nothing in the FAC or Opposition supports finding Plaintiff validly pled a violation of either section of the California statute or its federal wiretapping corollary, the ECPA, within his conclusory allegations about how software operates but without showing how it operated as to his experience. Similarly, the Opposition fails to cite, and thus concedes, any response to the lack of valid damage or loss recognized to meet the required elements of either CDAFA or the UCL. And Plaintiff fails to cite any basis for concluding that the software alleged to be at issue is anything more than routine business activity that any reasonable internet visitor would expect to find on the FindLaw Website, including based on the Website's own disclosures that are incorporated by reference into the FAC's heavy reliance on that same Website. For these and each of the reasons set forth in the opening brief, Plaintiff does not state a valid claim for relief under any of his five causes of action.

Plaintiff already amended his allegations once, in response to Internet Brands' initial Motion to Dismiss and now, still unable to cite credible allegations to address the fatal gaps in his pleading, the Opposition asks the Court to permit further amendment based on improper introduction of purported expert reports and conclusory allegations that are outside the bounds of what has been alleged or should be considered by the Court. Dismissal with prejudice is appropriate.

## ARGUMENT

Consistent with Rule 12(b)(6), each of Plaintiff's five counts should be dismissed for failure to state a valid claim for relief and Plaintiff's Opposition does not offer any basis for this Court to conclude otherwise. Each claim will be addressed in turn.

### I. Plaintiff's CIPA Claims Are Insufficiently and Fatally Pled.

#### A. Plaintiff's CIPA Section 631 Claim Must be Dismissed.

Plaintiff's Opposition fails to rebut any of the three independent bases offered in the Motion for dismissal of the CIPA Section 631 claim. (Mtn. 3–6.) Specifically, the Opposition fails to show alleged in-transit capture of Plaintiff's communications, that Internet Brands was anything other than an exempt party to the communications, and invites the Court to adopt an overbroad interpretation of the scienter requirement for aiding and abetting liability that lacks valid precedent. The FAC does not state a valid CIPA Section 631 claim and the Opposition does not provide a basis to conclude otherwise.

##### 1. Plaintiff's Conclusory Allegations of In-Transit Interception are Insufficient.

The Opposition attempts to repackage the FAC's allegations of in-transit capture as specific by citing nothing more than the allegation that information was captured in "real time" through "page-load firing, real-time transmissions." (Opp. 3.) Such conclusory labels are insufficient to meet the *Iqbal* standard and, on that basis, prior courts have repeatedly held that such allegations are insufficient. (Mtn. 3–4.) Specifically, "[p]laintiffs must provide more than conclusory allegations that messages were intercepted during transmission and in real time." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (internal quotation and citation omitted). Neither the Opposition nor FAC provide anything "more than conclusory allegations." (Opp. 3 (citing FAC ¶¶ 45–48 (describing Microsoft Clarity in general); *id.* at ¶¶ 50–57 (describing generally tracking technology owned by Google and Meta); *id.* at ¶¶ 61–68 (describing broad categories of information purportedly shared and the process of "canvas fingerprinting"); *id.* at ¶¶ 74–80 (regarding consent)).) These vague, non-personalized allegations do not even amount to "conclusory allegations restating the pleading requirement of real-time interception[.]" *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024).

The Opposition makes much of the fact that the FAC provided the names and types of tracking technologies deployed on the Website. (Opp. 2.) But cataloging the presence of cookies, pixels, and analytics scripts does not explain how any of these technologies intercepted any communication while it was in transit as opposed to collecting data that was already delivered to the Website or stored in the user's browser. The Opposition cites (at 3) *Konop v. Hawaiian Airlines, Inc.*, where the court granted summary judgment for the defendant because interceptions "must be acquired during transmission, not while [the communication] is in electronic storage." 302 F.3d 868, 878 (9th Cir. 2002). Plaintiff, like the plaintiff in *Konop*, fails to assert anything beyond a capture from electronic storage.

Unable to address the issue of in-transit interception directly, the Opposition (at 3–7) seeks to distract the Court with cases addressing other CIPA elements such as consent and contents of communication that were not at issue in the Motion. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1–2 (9th Cir. May 31, 2022) (regarding consent); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023) (discussing Section 638 and defining "contents" of communications); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928–31 (N.D. Cal. 2024) (analyzing Section 638 only); *In re Zynga Priv. Litig.,* 750 F.3d 1098, 1106–07 (9th Cir. 2014) (discussing what constitutes "contents" under CIPA); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1072–76 (N.D. Cal. 2023) (citing background section and analysis on intent); *Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025) (regarding a CIPA claim brought solely on an aiding and abetting theory). None of these cases address, much less salvage, Plaintiff's failure to allege the required element of in-transit interception.

**2. Internet Brand Was a Party to the Communications.**

The Opposition's argument that "embedded tracking vendors [are treated] as independent third-party eavesdroppers" (Opp. 5), is unrelated to whether Internet Brands was a party to the communications with Plaintiff. (Mtn. 5.)[1] "Plaintiff fails to respond to this argument and therefore

---

[1] Plaintiff relies on two inapposite cases: *Ambriz v. Google, LLC*, 2025 WL 830450, at *2–3 (N.D. Cal. Feb. 10, 2025) (analyzing whether Google was a party to calls made to Verizon) and *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3–5 (N.D. Cal. Apr. 4, 2025) (regarding aiding and abetting liability for "third-party violations by Meta and Attentive"). Neither case stands for the

concedes it through silence." *Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1146 (N.D. Cal. 2020) (internal citation omitted); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 495 F. Supp. 3d 848, 854 (C.D. Cal. 2020) ("Arguments to which no response is supplied are deemed conceded."). It is undisputed that Internet Brands was a party to the communications at issue.

**3. Plaintiff's "Proposed Intent" Standard for Scienter Improperly Seeks to Expand the Scope of CIPA.**

The Opposition's brief argument regarding scienter (Opp. 7) does not alter the conclusion that Plaintiff has failed to plead facts supporting a plausible inference that Internet Brands acted with the knowledge and intent required for aiding-and-abetting liability under CIPA Section 631.

Plaintiff's theory reduces to the proposition that a website operator's decision to "knowingly embed[] third-party code" on its website—standing alone—demonstrates the requisite scienter to support a Penal Code violation. (Opp. 7.) That argument has been squarely rejected; rather, courts have consistently held that the aiding and abetting clause "indicates that the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (emphasis in original). In *Esparza v. UAG Escondido A1, Inc.*, the court applied a common law meaning of aiding and abetting to CIPA Section 631 and held that a defendant's having "embedded [a third party's] software code into its website" is not a "finding that [the third party] was engaged in wiretapping or eavesdropping, and even if there was such a finding, that would not speak to [d]efendant's knowledge." 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024); s*ee* Mtn. 5–6. The "common-law tradition" for "civil aiding and abetting" liability has consistently held that where a federal statute imposes civil liability only upon a person "who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483–85 (2023) (internal citation omitted). The Opposition does not, because it cannot, argue that Internet Brands acted with a third party to knowingly violate the law, offering

---

proposition that a website owner/operator like Internet Brands should be considered anything other than a party to the communication with a Website user like Plaintiff.

nothing more than repeated allegations that Internet Brands loaded the software onto its website. FAC ¶¶ 74–80, 101–07, 127–54. That is insufficient.

While the Opposition seeks a broad reading of aiding and abetting liability (Opp. 7), CIPA is a penal code statute that must be narrowly construed. In *Doe v. Eating Recovery Center LLC*, this Court highlighted the rule of lenity "[w]hen courts are called upon to interpret ambiguous criminal statutes in California, . . . even when the statute is being invoked in a civil action" and noted "[c]ourts are also supposed to narrowly construe civil statutes that impose punitive civil penalties." 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) (citing *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001), *Hale v. Morgan*, 22 Cal. 3d 388, 401 (1978)) (Chhabria, J.). Contrary to these well-reasoned decisions, the Opposition argues the FAC sufficiently states scienter because it alleges "FindLaw knowingly embedded third-party code." (Opp. 7.) Not so. For example, in *Rodriguez v. Ford Motor Co.*, the court dismissed an aiding-and-abetting claim because "Plaintiff has not alleged that Defendants knew [the software provider's] conduct constituted a breach of some duty" or that the software "has the capability of using the chat data for its own purposes and benefit." 722 F. Supp. 3d 1104, 1122–24 (S.D. Cal. 2024). Here, the FAC similarly fails to describe how Internet Brands knew that any third party could or would use any data collected for its own purposes; thus, Plaintiff does not validly allege Internet Brands had the scienter to be liable for aiding and abetting liability.

For each of these reasons, Plaintiff's CIPA Section 631 claim fails.

### B. Plaintiff's Interpretation of CIPA Section 638 is Unmoored from the Text.

CIPA Section 638.51 is rooted in concepts of dialing, routing, and signaling information associated with telephonic communications, not the website technology at issue here. (Mtn. 6–8.)[2]

This Court recently addressed the question of Section 638's scope observing that "[t]he state of affairs with CIPA is untenable" and held that "courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Doe*, 806 F. Supp. 3d at 1112 (Chhabria, J.).

---

[2] The Opposition challenges the weight of unpublished California trial court opinions (Opp. 9); however, "federal courts 'may consider unpublished state decisions, even though such opinions have no precedential value.'" *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1165 (S.D. Cal. 2019) (citing *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 & n.8 (9th Cir. 2003)).

Just last week, a Los Angeles County Superior Court agreed, noting that "applying the ordinary rules of statutory construction and considering both the structural context of Penal Code § 638.51 and the legislative history, the Court conclude[d] that this statute applies to telephonic communications and not to software on a commercial website." *Blaker v. NetScout Systems, Inc.*, No. 25STCV31283, Order re: Defendant's Motion Demurrer to Complaint at 7 (Los Angeles Cnty. May 27, 2026). The Opposition offers no valid basis to bridge the gap from the law's focus on telephone calling data to the FAC's allegations concerning website routing data, and this Court must not take that unsupported analytical leap.

Contrary to Plaintiff's suggestion (Opp. 8), the FAC does not allege the collection of any "addressing, routing, and signaling information," nor does it mention addressing information other than IP addresses. (*See id.* (citing FAC ¶¶ 51–54 (describing generally tracking technology owned by Google); *id.* at ¶¶ 61–68 (describing broad categories of information purportedly shared and the process of "canvas fingerprinting"); *id.* at ¶¶ 91–94 (identifying only "collection of IP addresses"); *id.* at ¶¶ 128–51 (describing the functionality of various tracking technologies)).) Judge Lin recently found similarly generic allegations regarding "collection of IP addresses" as insufficient to conclude a plaintiff "specif[ied] how or when IP addresses are recorded." *In re Meta Android Privacy Litig.*, 2026 WL 1279416, at *8 (N.D. Cal. May 11, 2026). "Without that specificity, [p]laintiffs [have] not adequately alleged that the [software] records IP addresses." *Id.* The same bald pen register allegations rejected in *In re Meta Android* are all Plaintiff alleges here. *See* FAC ¶ 91 ("[T]he Trackers collect information that identifies the outgoing 'routing, addressing, or signaling information' of the user by through the collection of IP addresses[.]"); *id.* at ¶ 136 ("Defendant installed the Trackers—which are pen registers—on Plaintiff's and Class Members' browsers and used the Trackers to collect identifying information of Plaintiff and Class Members, including IP addresses."). That is insufficient to state a valid claim under Section 638.

The Opposition asks this Court to pivot from its own prior assessment on the scope of Section 638, and adopt the approach from *Nelson v. Reddit, Inc.*, 2026 WL 445627 (S.D. Cal. Feb. 17, 2026) to find that "[i]f *Nelson* survived, Plaintiff's FAC should too *a fortiori*." (Opp. 9–10.) But *Nelson* included specifically detailed allegations regarding the plaintiff's experience that are

not present in the FAC and presents nothing more than a less-reasoned approach that should not move this Court to alter its conclusions from *Doe* and the line of cases that found similarly.[3] Plaintiff fails to state a valid claim under Section 638; thus, his claim must be dismissed.

**II. <u>Plaintiff's ECPA Claim is Barred by the Party Exception.</u>**

Under ECPA (and CIPA), it is lawful for an entity to capture electronic communications where the entity is a party to the communications, so long as such interception is not for the purpose of committing any criminal or tortious act. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 607 (9th Cir. 2020) (confirming that courts perform the same party exemption analysis under the ECPA and the CIPA); Mtn 8–9. As discussed, Plaintiff has not disputed that Internet Brands is a party to the communications at issue (*see supra*, I(A)(2)); thus, like the wide receiver intended to catch a pass from the quarterback, Internet Brands could not have intercepted any communications received from Plaintiff. *See Pena v. Gamestop, Inc.*, 670 F. Supp. 3d 1112, 1118–19 (S.D. Cal. 2023). In *Doe I v. Google LLC*, this Court dismissed an ECPA claim based on consent of website operators in "choos[ing] to install Google source code on their web properties" because "[t]his must mean the providers consented to the operation of Google source code." 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (Chhabria, J.). The same is alleged here.

The Opposition argues the party exception is inapplicable because Internet Brands undertook "the tracking . . . for downstream profiling, retargeting, audience creation, ad measurement, optimization, [and] monetization," which is proffered as a criminal or tortious act that vitiates protection by the party exception. (Opp. 10.) However, courts have consistently rejected that argument, explaining that the alleged interception itself cannot also be the tort or crime that defeats the party exception. *See, e.g.*, *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065–66 (C.D. Cal. 2024). This holds true even if the interception is for financial gain. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057–58 (N.D. Cal. 2025). And Plaintiff's argument that it

[3] Plaintiff's reliance on opinions from a purported expert (Opp. 8–9) cannot be relied upon in ruling on the Motion and are irrelevant at this stage. *Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 & n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers.") (emphasis in original).

was Internet Brands' "purpose" to "violat[e] . . . CIPA, CDAFA, and the California Constitution" (Opp. 10), is unsupported by the allegations in the FAC which cites multiple other purposes but not such claimed purposes. *See* FAC ¶ 74 ("Defendant uses the Trackers to collect the identifying information and user behavior and activity from Class Members and transmits that data to the third-parties "); ¶ 91 ("Defendant executes each of the Trackers on the user's browser for marketing and analytics purposes"); ¶ 154 ("Defendant . . . used Plaintiff's identifying information, behavior, and activity obtained from the Trackers for its own advertising and marketing purposes"). "Under [ECPA], the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broadcasting Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotation omitted).

The Opposition (at 10) relies on *Doe v. Meta Platforms* and *Smith v. Rack Room Shoes* to support applicability of the crime-tort exception but neither case supports sustaining the claim. Indeed, *Doe*'s only reference to the crime-tort exception is in summarizing a prior preliminary injunction order. 690 F. Supp. 3d at 1077 & n.2 And the pages cited by the Opposition (*see id.* at 1077–79) do not address that issue but speak to consent under ECPA and extraterritoriality as applied to CIPA—neither issue is applicable here. While *Smith* did address the crime-tort exception—albeit at page *7 and not pages *4–5 as cited by Plaintiff—that court confirmed the exception does not apply where the plaintiffs "provided the relevant information to [the defendant] voluntarily and understood that it would be received by [the defendant] via its website." 2025 WL 1085169, at *7.

Because Plaintiff has not shown that the crime-tort exception applies, his ECPA claim fails.

## III. <u>Plaintiff Does Not Allege a Valid Violation of CDAFA.</u>

The Opposition argues that the CDAFA claim is validly plead because the FAC "tracks the statute's text." (Opp. 11.) Internet Brands agrees that the cited portions of the FAC (¶¶ 158–77) quote verbatim from the statute; however, that is insufficient to state a valid claim. What the Opposition does not cite is any specific or particularized allegation of how Internet Brands purportedly violated CDAFA. Thus, Plaintiff fails to show that a claim is validly stated.

Without citation or support, the Opposition asserts that Internet Brands caused "measurable device impairment" and "cognizable device-based loss." (Opp. 11.) Such unsupported statements are insufficient, including because they lack any grounding in the FAC. *Matthews v. Cnty. of Santa Cruz*, 2021 WL 949419, at *6 (N.D. Cal. Mar. 12, 2021) ("[A] brief opposing a motion to dismiss cannot amend a complaint"). CDAFA recognizes three specific categories of private harm—cost to repair Plaintiff's computer, lost revenue, or interruption of computer services. (Mtn. 9.) The Opposition does not, because it cannot, cite any allegations in the FAC that support finding any of these harms were suffered. Without such allegations, the FAC omits a critical element and the claim must be dismissed.

Lacking any direct rebuttal, the Opposition (at 11) discusses two cases against software provider Google that cannot fairly be analogized to claims against website owner Internet Brands. Both the facts and law at issue in those cases are distinguishable. In *Brown v. Google LLC*, the court permitted a CDAFA claim because of an alleged violation of CDAFA's circumvention requirement. 525 F. Supp. 3d 1049, 1075 (N.D. Cal. 2021) ("[P]laintiffs can state a CDAFA claim where a software system 'was designed in such a way to render ineffective any barriers that the plaintiffs must wish to use to prevent access to their information.'") (internal citation omitted). Plaintiff here does not and cannot present such an allegation regarding website operator Internet Brands. Alternatively, the *Brown* plaintiffs alleged that Google "transmitted data without notice while they were in private browsing mode" through use of a "hidden code." *Id.* Similar allegations are absent here and would not fit the facts relevant to this case. The Opposition's unexplained citation to *In re Google Assistant Privacy Litig.* is curious since that case did not include a CDAFA claim at all. *See* 457 F. Supp. 3d 797 (N.D. Cal. 2020).

## IV. <u>Plaintiff's Invasion of Privacy Claim Does Not Satisfy Any of the Three Elements.</u>

The Opposition fails to establish a valid invasion of privacy claim because it does not cite any allegations of a protected privacy interest, show a reasonable expectation of privacy, or establish disclosure of highly sensitive information.

### A. Plaintiff Does Not Have a Protected Privacy Interest.

The Opposition, like the FAC, does not identify a legally protected privacy interest. Tellingly, Plaintiff does not cite any paragraph in the FAC in arguing that "surreptitious tracking

of users' detailed browsing histories tied to user identifiers plausibly invades a legally protected privacy interest." (Opp. 12.) Thus, even if accepted as true, the FAC does not contain allegations that Internet Brands has tied browsing histories to users. At most, Plaintiff alleges the capture of information about "devices," not himself (or any individual person). *See, e.g.*, FAC ¶ 15 (at best, alleging that "techniques . . . are used to identify a user's device across visits"); Opp. 1 ("Those trackers allegedly identified Plaintiff's device[.]"). Such allegations do not establish a protected privacy interest and the Opposition does not argue otherwise. (*See* Opp. 12 (citing *In re Facebook Internet Tracking Litig.*, 956 F.3d at 602–06 (addressing the reasonable expectation prong, not the protected interest prong, and finding that "the relevant question here is whether a user would reasonably expect that Facebook would have access to the user's individual data after the user logged out of the application"); *Doe*, 690 F. Supp. 3d at 1080–81 (limiting the protected privacy interest to "medical communications" and distinguishing between "both unprotected and constitutionally protected information [that] was captured by Meta's Pixel"); *Lewis v. Superior Court*, 3 Cal. 5th 561, 570, 580 (2017) (acknowledging the legally protected privacy interest in medical and prescription records)).) Unlike the cases cited by the Opposition, the FAC does not allege the type of pairing conduct at issue in those matters much less the capture of any personal medical information. The Opposition offers no authority rebutting Internet Brands' argument that there is no legally protected privacy interest in generic browsing data (Mtn. 10–12) and this Court should not permit Plaintiff to create a new right.

**B. There is No Reasonable Expectation of Privacy in Routine Online Behavior.**

The Opposition focuses on whether the Website's "public-facing website policies" provided sufficient notice to undermine a reasonable expectation of privacy (Opp. 13) but fails to rebut Internet Brands' argument that Plaintiff "has no objective entitlement to privacy based on community norms," which is supported by the overwhelming weight of case law. (Mtn. 12–13.) Accordingly, the argument has been conceded and that is sufficient to defeat the invasion of privacy claim. *Namisnak*, 444 F. Supp. 3d at 1146; *Travelers*, 495 F. Supp. 3d at 854.

As to the Website's Terms of Use and Privacy Policy, the Opposition did not dispute the validity, accessibility, or import of those documents; rather, Plaintiff asks this Court to simply

ignore the documents until a later phase of the case. (Opp. 13.) The Website's policies are proper subjects of judicial notice and may be considered at the motion to dismiss stage, including because the entire Website is incorporated by reference into the FAC. (*See* Mtn. 13 & n.2.) The authorities cited by the Opposition do not hold otherwise. In fact, Plaintiff relies on a series of cases that have nothing to do with website policy documents that are properly (and regularly) considered by courts in similar cases. Plaintiff cites (at 13) *Lee v. City of Los Angeles*, which held that "disputed facts stated in public records" (court documents) are improper subjects of judicial notice and overturned a ruling on a motion to dismiss where a court relied on disputed statements in the judicial record. 250 F.3d 668, 689–90 (9th Cir. 2001). Similarly, the Ninth Circuit reversed in *Khoja v. Orexigen Therapeutics, Inc.* where the district court improperly took judicial notice of transcripts from investor calls and agency reports for determinations of disputed facts. 899 F.3d 988, 999–1002 (9th Cir. 2018). The materials subject to judicial notice here are neither subjective nor disputable.

Further, Internet Brands does not offer the policies to argue that they "bind a user" (Opp. 13), but as a basis for showing what a reasonable Website visitor would expect regarding their privacy. (Mtn 13 & n.2.) Several of Plaintiff's own cases confirm the propriety of considering a website's complete set of terms where the complaint asserts claims based on website interactions. (*See* Opp. 13 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014) (evaluating website's terms of use to determine whether a consumer had reasonable notice of arbitration provision); *Berman v. Freedom Financial Network, LLC*, 30 F. 4th 849, 856–58 (9th Cir. 2022) (same); *Long v. Provide Commerce, Inc.,* 245 Cal. App. 4th 855, 862–65 (2016) (same)).)

None of Plaintiff's arguments suffice to show that he had a reasonable expectation of privacy in his routine online browsing behavior, including based on the Website's disclosure of the conduct alleged to be at issue.

**C. Plaintiff Has Not Alleged Disclosure of Any Highly Offensive Information.**

Plaintiff's Opposition does not identify anything beyond allegations concerning disclosure of generic, non-personalized information Plaintiff obtained on the public-facing Website. That cannot be considered "highly offensive;" thus, the invasion of privacy claim fails. (Mtn. 13–15.)

The Opposition relies on inapposite decisions such as *In re Facebook, Inc. Internet Tracking Litig.*, arguing that case stands for the overbroad proposition that "[s]urreptitious tracking of detailed URLs, browsing histories, and search-term data can expose deeply private concerns and plausibly sustain Wiretap Act, CIPA, and well-pleaded privacy claims." (Opp. 14.) That is both false and a misstatement of the holding. The only portion of *Facebook* addressing invasion of privacy claims found that collection was highly offensive where the plaintiffs alleged "surreptitious data collection when individuals were not using Facebook." 956 F. 3d at 606. It was the off-website tracking that the court held elevated the conduct to "highly offensive information." Here, Plaintiff does not and cannot allege anything analogous. Rather, the FAC alleges that Plaintiff's online activities were tracked when he visited the Findlaw Website. *See* FAC ¶¶ 72–78 (regarding functionality of the Findlaw website); *id.* at ¶¶ 97–110 (describing Plaintiff's experience on the Findlaw website). Plaintiff offers no allegation that Internet Brands was (or could) track his conduct beyond the Website. Plaintiff's only other authority on this point actually resulted in dismissal of the invasion of privacy claim because the "plaintiffs fail[ed] to identify with specificity what, if any, private or particularly sensitive information about them Meta allegedly received." (Opp. 14 (citing *Doe*, 690 F. Supp. 3d at 1081).) The same result is warranted here.

In contrast, this Court has previously evaluated similar claims by website visitors and found that alleged interception of consumers' online browsing data does not state a valid invasion of privacy claim because "even acknowledging that the plaintiffs themselves had strong feelings about the intrusions, they were not so serious as to constitute a violation of the California Constitution or tort law relating to privacy." *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024) (Chhabria, J.). For the same reasons, the Court should dismiss Plaintiff's invasion of privacy claim here.

Plaintiff's attempt to argue that the volume of tracking technology purportedly running on the Website converts germane website activity into something "highly offensive" (Opp. 13) similarly misses the mark. First, the continued reliance on "expert reports" (*id.*) to support allegations beyond the FAC is inappropriate at this stage. *Schneider*, 151 F.3d at 1197 & n.1. Second, Plaintiff cites no authority at all for the proposition that the number of tracking

technologies allegedly running on a website—though his FAC addresses only a handful—transforms the collection of his search terms into a valid claim.

Plaintiff fails to show that the collection of search terms submitted to the Website meets the "high bar" set for a highly offensive intrusion; thus, he fails to state a valid invasion of privacy and his claim should be dismissed.

## V. <u>Plaintiff's Theory of Loss Under the UCL is Inconsistent with Precedent.</u>

Plaintiff's Opposition misconstrues Internet Brands' argument and does not save his claim. As an initial matter, because Plaintiff's CIPA, ECPA, CDAFA, and California constitutional claims each fail for the reasons stated above, they cannot form the basis for a claim under the UCL's "unlawful" prong. *Lopez v. Bank of America, N.A.*, 505 F. Supp. 3d 961, 976 (N.D. Cal. 2020) (dismissing UCL claim and stating: "[b]ecause [plaintiff] has failed to state a claim under any other theory, he has not alleged an 'unlawful' practice to support a claim under the UCL"). Without such a violation, the UCL claim must also fall.

The Opposition posits that because Internet Brands allegedly "monetized" Plaintiff's data, that constitutes a loss to Plaintiff. (Opp. 14.) That improperly conflates a defendant's gain with a plaintiff's loss. In *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, this Court dismissed a UCL claim stating: "It's true . . . that Facebook may have gained money through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs lost money." 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) (Chhabria, J.). Where, like here, a plaintiff alleges only loss of personal data that is insufficient to state a loss and the UCL claim should be dismissed. In *Cottle v. Plaid Inc.*, the court held that for a UCL claim to proceed, "a plaintiff must 'demonstrate some form of economic injury,' such as surrendering more or acquiring less in a[] transaction, having a present or future property interest diminished, being deprived of money or property, or entering into a transaction costing money or property that would otherwise have been unnecessary." 536 F. Supp. 3d 461, 484 (N.D. Cal. 2021).

Plaintiff does not and cannot allege that he paid money to access the Website, lost out on a financial transaction, or was deprived of any property interest because of Internet Brands' alleged conduct. Indeed, the Opposition cites *Kwikset Corp. v. Superior Court* (Opp. 14–15) which

confirmed the requirement "that a plaintiff have lost money or property to have standing to sue" under the UCL. 51 Cal. 4th 310, 323 (2011). The FAC does not allege a valid injury under the UCL and the Opposition does not provide any basis to conclude otherwise.

Finally, the Opposition proposes permitting an "unjust enrichment" theory of UCL damages (Opp. 14–15); however, the allegations in the FAC are insufficient to meet that as well. Plaintiff cites *In re Facebook, Inc. Internet Tracking Litig.* (*id.*), which allowed a UCL claim to survive a motion to dismiss because the complaint contained specific allegations regarding the sale of user data to generate revenue, including specific percentages of the portion of revenue from ad sales and reference to "a study that values users' browsing histories at $52 per year." 956 F. 3d at 600–01. The FAC offers nothing similar and the Opposition does not argue otherwise.

Plaintiff does not and cannot allege a valid loss to support a violation of the UCL, thus, that claim must be dismissed.

**VI. <u>Dismissal with Prejudice is Appropriate</u>**

Plaintiff's five causes of action are legally deficient, fail to satisfy the minimum pleading standards under Rule 12(b)(6), and cannot be cured by amendment, particularly where Plaintiff has had a chance to amend in response to Internet Brands' similar arguments and failed to do so. It is within "the district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended the complaint." *In re Wet Seal, Inc. Securities Litig.*, 518 F. Supp. 2d 1148, 1181 (C.D. Cal. 2007) (citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.1990)). Plaintiff's failure to plead a valid claim and prior attempt to amend warrants dismissal as a matter of law with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those presented in its opening brief, Internet Brands respectfully requests that the Court dismiss Plaintiff's FAC in its entirety, with prejudice, for failure to state a valid claim for relief under Rule 12(b)(6).

Dated: June 8, 2026

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: *\/s/ Paul A. Rosenthal*
Paul A. Rosenthal
Joie C. Hand
Kaylee A. Racs

Attorneys for Defendant
MH Sub I, LLC