**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT EVANS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MH SUB I, LLC, a Delaware Corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 3:26-cv-02684-VC<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING CALIFORNIA PENAL CODE §§ 638.50 AND 638.51**<br><br>Hon. Vince Chhabria |

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. SECTION 638.50(b) DEFINES A PEN REGISTER BY WHAT THE DEVICE OR PROCESS "RECORDS OR DECODES"—NOT BY ITS OTHER CAPABILITIES ........ 2

III. *SMITH* DOES NOT ADD AN INCAPABILITY REQUIREMENT; *META PIXEL* REJECTS MUTUAL EXCLUSIVITY ........ 4

IV. LENITY CANNOT SUPPLY THE INCAPABILITY REQUIREMENT THE STATUTE OMITS ........ 6

V. EVEN UNDER A PROCESS-SPECIFIC CONSTRUCTION, THE FAC PLAUSIBLY ALLEGES DISTINCT DRAS-RECORDING OPERATIONS ........ 7

VI. ANY NEWLY REQUIRED PROCESS-LEVEL DETAIL WARRANTS LEAVE TO AMEND—NOT DISMISSAL WITH PREJUDICE ........ 8

VII. CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Cases**

*Briskin v. Shopify Inc.*, No. 21-cv-06269-PJH, ECF No. 112, at 7–8 (N.D. Cal. July 30, 2026) ..... 7

*City of Cotati v. Cashman*, 29 Cal. 4th 69, 75 (2002) .......... 2

*Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109, 1112, 1118–19 (N.D. Cal. 2025) ...... 7

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) .......... 9

*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025) .......... 5

*Gliksman v. Healthline Media, LLC*, No. 24-cv-08650-AMO, ECF No. 77, at 9–10 (N.D. Cal. June 23, 2026) .......... 1, 5, 6

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023) .......... 3

*In re Meta Android Privacy Litigation*, 2026 WL 1279416, at *8 (N.D. Cal. May 11, 2026) .......... 8

*In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153–55 (N.D. Cal. 2025) .......... 1, 5, 6

*Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) .......... 6

*Nelson v. Reddit, Inc.*, No. 25-cv-01470-JLS-AHG, 2026 WL 445627, at *5 (S.D. Cal. Feb. 17, 2026) .......... 3, 4, 6

*People v. Avery*, 27 Cal. 4th 49, 58 (2002); *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021).... 6

*Reno v. Koray*, 515 U.S. 50, 64 (1995) .......... 6

**Statutes**

18 U.S.C. § 3121(c) .......... 3

18 U.S.C. § 3127(3) .......... 3

Cal. Penal Code § 4 .......... 6

Cal. Penal Code § 638.50(b) .......... 2, 5, 7

Cal. Penal Code § 638.51(b) .......... 2, 5

## I. INTRODUCTION

The Court's tentative correctly identifies the essential distinction embodied in a pen register: the pen-register function records dialing, routing, addressing, or signaling information ("DRAS information"), rather than communication contents.[1] But Section 638.50 does not convert that distinction into an unstated requirement that the relevant technology be inherently incapable of recording content. The statute asks what a "device or process" "records or decodes," not what it could record through a different function. To be clear, Plaintiff's position does not depend on treating every functionality within a larger software system as a separate process. Section 638.50(b) defines the pen-register function by the information it records or decodes; a device or process that records DRAS information in that function is not categorically disqualified merely because the same technology also performs a content-recording function.

That reading follows from the enacted text and structure, the Legislature's technology-neutral use of "process," California's prohibition against rewriting statutes to conform to presumed but unexpressed intentions, and the parallel federal statutory framework. It is also the construction adopted in *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153–55 (N.D. Cal. 2025), and, after the parties completed briefing here, *Gliksman v. Healthline Media, LLC*, No. 24-cv-08650-AMO, ECF No. 77, at 9–10 (N.D. Cal. June 23, 2026), which rejected both the asserted mutual exclusivity of Sections 631 and 638.51 and the accompanying rule-of-lenity argument.

Independently, even under a mutually exclusive, process-specific construction, dismissal remains unwarranted. The FAC alleges multiple distinct tracking technologies and scripts, multiple data flows and third-party requests, and the collection of both IP addresses and other DRAS information and communication contents. Those allegations do not compel the pleading-stage inference that every DRAS-recording operation was identical to the operation that captured content. If the Court requires express identification of a particular noncontent-only process, Plaintiff should be granted leave to amend.

---

[1] Because the Court's order focuses on the pen-register definition, this Supplemental Brief addresses that theory. Plaintiff does not waive any separately supported theory under Section 638.51 concerning a trap-and-trace device.

## II. SECTION 638.50(b) DEFINES A PEN REGISTER BY WHAT THE DEVICE OR PROCESS "RECORDS OR DECODES"—NOT BY ITS OTHER CAPABILITIES

Section 638.50(b) defines a pen register as "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . but not the contents of a communication." Cal. Penal Code § 638.50(b). The object of "records or decodes" is the specified DRAS information, and the contrasting phrase "but not the contents" marks the line between that noncontent information and communication content.[2] The statute does not say "a device or process incapable of recording contents," nor does it use "capable," "exclusively," or "only." Its operative verbs address what the relevant device or process records in the pen-register function—not every latent capability of the technology.

The structure of subsection (b) confirms that conclusion. Immediately after defining "pen register," the statute expressly provides that the term "does not include" specified devices or processes used for billing, cost accounting, and similar ordinary-course purposes. Cal. Penal Code § 638.50(b). Cal. Penal Code § 638.51(b) likewise enumerates specific circumstances in which a service provider may use a pen register without a court order. When the Legislature wished to exclude a category or create an exception, it did so expressly. It did not exclude a DRAS-recording device or process merely because the same technology is capable of performing a content-recording function.

Nor may the historical characteristics of one implementation of a pen register supply an element absent from the enacted definition. California courts have "no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 75 (2002). Section 638.50(b) chose a functional definition—what a "device or process" "records or decodes"—rather than a modal definition asking what the technology is "capable" of recording. Converting "records or decodes . . . but not the contents" into "is incapable of recording contents" would replace the Legislature's enacted test with a different one.

---

[2] "Noncontent" is used here solely in the statutory sense employed by Section 638.50(b). It does not mean that IP addresses, persistent identifiers, or other DRAS information are anonymous, innocuous, nonpersonal, or unprotected under Plaintiff's other claims.

*Nelson* applied the same textual discipline in rejecting a different effort to narrow Section 638.51. There, the defendant argued that a plaintiff must allege an underlying communication containing substantive content; the court rejected the argument because it effectively asked the court to add a requirement not found in the statute. *Nelson v. Reddit, Inc.*, No. 25-cv-01470-JLS-AHG, 2026 WL 445627, at *5 (S.D. Cal. Feb. 17, 2026). The proposed incapability element presents the same interpretive defect: “incapable,” “capable,” “only,” and “exclusively” do not appear in Section 638.50(b).

The Legislature’s inclusion of “process” is independently significant. Software may perform multiple functions, and a process that records an IP address or other addressing information does not cease performing a pen-register function because the technology also performs a content-related function. Reading the definition to turn on every capability of a multifunction system would subordinate the enacted term “process” to the broader system and add the exclusivity requirement the Legislature omitted. See *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023) (concluding that the expansive term “process” encompasses software that gathers and correlates identifying information).

The federal statutory framework reinforces that functional reading. Federal law likewise defines a pen register by the DRAS information it records or decodes, while separately directing authorized government users to employ reasonably available technology that restricts recording to DRAS information “so as not to include” communication contents. 18 U.S.C. § 3121(c), 18 U.S.C. § 3127(3). That operational restriction is difficult to reconcile with an inherent-incapability rule: if qualifying pen-register technology were already required to be incapable of recording content, there would be little work for Section 3121(c)’s technological restriction to perform. At minimum, the federal structure demonstrates that the concept of a pen register is compatible with technology whose operation can be restricted to noncontent collection, rather than only hardware inherently incapable of doing anything else.

## III. *SMITH* DOES NOT ADD AN INCAPABILITY REQUIREMENT; *META PIXEL* REJECTS MUTUAL EXCLUSIVITY

*Smith v. Maryland* addressed a different question. The issue before the Court was whether the installation and use of a traditional telephone pen register constituted a "search" under the Fourth Amendment. 442 U.S. 735, 736 (1979). The Court held that it did not because the defendant lacked a legitimate expectation of privacy in the telephone numbers he voluntarily conveyed to the telephone company. *Id.* at 742–46

In reaching that conclusion, the Court first identified "the nature of the state activity" being challenged and explained that the historical telephone pen register before it did not acquire communication contents, hear sound, or reveal the substance of conversations. *Id.* at 741–42. Given those limited capabilities, the constitutional issue necessarily concerned whether the caller possessed a legitimate expectation of privacy in the numbers dialed, rather than in conversational content. *Id.* The Court's discussion of the device's capabilities thus framed the privacy interest implicated for purposes of its Fourth Amendment analysis.

*Smith* therefore confirms the distinction between dialing information and communication contents for purposes of the Fourth Amendment question before it. It did not construe California Penal Code section 638.50(b), interpret a technology-neutral statutory definition of a "device or process," or hold that modern multifunction technology is categorically excluded whenever another function is capable of recording communication contents. The statutory question here remains what the relevant device or process "records or decodes" in the alleged pen-register operation.

*Nelson* reinforces that distinction in the Internet-tracker context. It rejected an effort to confine Section 638.50(b) to the operating characteristics of traditional telephone pen registers, reasoning that the definition is technology-neutral and that it is immaterial that a website tracker does not operate like a traditional telephone pen register. *Nelson*, 2026 WL 445627, at *4. *Nelson* held that a tracker capturing an IP address transmitted with an outgoing HTTP request could plausibly qualify as a pen register. *Id.* The enacted "device or process" definition—not the technological form of the historical telephone device—therefore governs modern Internet tracking.

Recent decisions likewise recognize that Section 638.50(b)'s technology-neutral language reaches website tracking processes that record IP addresses and comparable addressing information. See *id.*; *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929–30 (N.D. Cal. 2024).

Most directly, *Meta Pixel* confronted the precise contention that technology alleged to collect communication contents cannot also qualify as a pen register, and rejected that categorical mutual-exclusivity rule. *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1152–55. Although the court initially described the statutory language as "ambiguous," it resolved the issue after considering CIPA's structure and operation and held that content collection does not exempt otherwise qualifying DRAS collection from Section 638.51. *Id.* at 1153–55. The opposite construction would create a statutory anomaly: technology otherwise subject to the pen-register prohibition could escape it simply by adding a more intrusive content-recording function, and Section 638.51(b)'s enumerated provider exceptions would be rendered largely superfluous. *Id.* at 1154–55. *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025), adopted that reasoning.

*Meta Pixel* also supplied an independent pleading-stage ground directly responsive to the Court's concern. Even assuming a single device could not simultaneously qualify as both a wiretap and a pen register, the complaint plausibly alleged that the Pixel was a "small library of functions," with one function collecting HTTP headers and IP addresses and another collecting communication contents. The court held that independently operating functionalities could constitute separate "device[s]" or "process[es]" under Section 638.50(b). *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1155. That alternative holding provides a legal framework applicable to the FAC's allegations of multiple trackers, scripts, technologies, and data flows. Although the FAC does not describe the internal functional architecture of every tracker, its allegations do not require the Court to infer that all pleaded DRAS and content collection occurred through one indivisible process.

*Gliksman* is a leading recent application. Healthline argued that pixels alleged to collect contents could not also fall within Section 638.51 and that lenity required mutual exclusivity. The court adopted *Meta Pixel*, rejected both arguments, and denied dismissal of the Section 638.51 claim. *Gliksman*, ECF No. 77, at 9–10. It acknowledged *Mitchener v. CuriosityStream, Inc.*, No.

25-cv-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025), but declined to follow that contrary approach.

## IV. LENITY CANNOT SUPPLY THE INCAPABILITY REQUIREMENT THE STATUTE OMITS

The existence of criminal consequences does not trigger a presumption in favor of Defendant's narrower construction. California's rule of lenity is a last-resort tiebreaker that applies only when ordinary interpretive tools leave two reasonable constructions in relative equipoise and convincing resolution is impracticable. *People v. Avery*, 27 Cal. 4th 49, 58 (2002); *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021).

Penal Code Section 4 independently forecloses treating criminal consequences as a reason to select the narrowest technologically imaginable construction. It provides that the common-law rule of strict construction "has no application" to the Penal Code and requires its provisions to be construed according to the "fair import" of their terms. Cal. Penal Code § 4; *Avery*, 27 Cal. 4th at 58. The fair import of "records or decodes" does not supply an unstated requirement that the relevant technology be inherently incapable of recording anything else.

Nor does *Meta Pixel*'s characterization of the language as "ambiguous" trigger lenity. California lenity does not apply merely because two readings can be articulated; it applies only if accepted interpretive tools cannot convincingly resolve them and the alternatives remain in relative equipoise. *Avery*, 27 Cal. 4th at 58; *Smith*, 11 Cal. 5th at 202. *Meta Pixel* did not remain in equipoise: after considering the statute's structure and operation, it adopted the nonexclusive construction and independently held that separate metadata-recording functionality could constitute a distinct "device" or "process." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1153–55.

*Gliksman* likewise rejected the combined mutual-exclusivity and lenity argument concerning pixels alleged to collect both content and IP-related information. *Gliksman*, ECF No. 77, at 9–10. *Nelson* independently rejected lenity in applying Sections 638.50 and 638.51 to an Internet tracker that captured IP-address information. *Nelson*, 2026 WL 445627, at *6. Relying on *Reno v. Koray*, 515 U.S. 50, 64 (1995), *Nelson* explained that a statute does not become ambiguous for lenity purposes merely because courts disagree over its construction. *Id.* Thus, neither the novelty

of applying Section 638.50 to modern tracking technology nor disagreement among district courts supplies the relative equipoise California law requires.

*Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109, 1112, 1118–19 (N.D. Cal. 2025), does not construe Sections 638.50 or 638.51. It addressed Section 631(a)'s materially different requirement concerning learning communication contents while a communication is "in transit," and it resolved that issue on summary judgment after development of a technology-specific evidentiary record. In *Briskin v. Shopify Inc.*, No. 21-cv-06269-PJH, ECF No. 112, at 7–8 (N.D. Cal. July 30, 2026), the court expressly distinguished *Doe* because it was decided "on summary judgment, with the benefit of a full evidentiary record" showing the technical operation of the challenged process, and declined to resolve the comparable technical issue against the plaintiff at the pleading stage. *Doe* therefore neither supplies a construction of Section 638.50(b) nor supports drawing a pleading-stage inference that every DRAS-recording process alleged here necessarily possesses a disqualifying content-recording capability.

## V. EVEN UNDER A PROCESS-SPECIFIC CONSTRUCTION, THE FAC PLAUSIBLY ALLEGES DISTINCT DRAS-RECORDING OPERATIONS

The FAC separately alleges the DRAS information supporting Section 638.51.[3] It explains that IP addresses permit devices and servers to address and route Internet communications; that loading the Website generates HTTP requests; and that Defendant deployed numerous third-party tracking processes that collected IP addresses and other pleaded DRAS information, including identifiers and fingerprinting outputs to the extent they fall within Section 638.50(b). FAC ¶¶ 21–26, 91–94, 128–38. It alleges 95 third-party trackers in forensic testing, 102 desktop and 105 mobile third-party tracker requests, 41 cookies, five fingerprinting instances, multiple advertising networks, and a separately identified session recorder. *Id.* ¶¶ 43–68, 128–38.

The FAC separately details Microsoft Clarity's session-replay functionality and also alleges that Meta, Google, and other tracking technologies collected content-revealing URLs, legal-search

[3] Paragraph 90's email example is illustrative only. The operative Section 638.51 allegations rest on the Trackers' collection of IP addresses and other dialing, routing, addressing, or signaling information—not email subject lines or other information concerning the substance, purport, or meaning of a communication. FAC ¶¶ 91, 135–38. Paragraph 90 does not expand the statutory definition beyond noncontent DRAS information.

activity, and behavioral data together with IP addresses and other identifiers. FAC ¶¶ 45–68, 128–32. The alternative argument is not that Clarity alone captured content, but that the FAC does not establish that every discrete DRAS-recording operation was necessarily identical to each content-recording operation. *Meta Pixel* confirms that, under a mutually exclusive construction, independently operating metadata- and content-recording functions may constitute separate devices or processes. 793 F. Supp. 3d at 1155. At Rule 12(b)(6), the Court should not collapse the FAC's multiple trackers, scripts, technologies, and data-collection functions into a single indivisible content-capable process or draw an adverse technical inference not established by the FAC.

*In re Meta Android Privacy Litigation*, 2026 WL 1279416, at *8 (N.D. Cal. May 11, 2026), does not warrant dismissal. It reaffirmed that IP addresses constitute "addressing" information but found a complaint deficient because it referenced IP addresses only once and did not specify how or when they were recorded, contrasting *Shah*'s more particular allegations. Here, the FAC alleges the HTTP-request mechanism, page-load tracking, specific tracking technologies, hundreds of third-party requests, and specific collection of IP addresses and other pleaded DRAS information. FAC ¶¶ 21–26, 56, 61–62, 91–94, 128–38.

Accordingly, the FAC is sufficient under Rule 12(b)(6) because its allegations do not establish that every DRAS-recording operation was the same operation that captured content. The Section 638.51 claim therefore should survive at the pleading stage.

## VI. ANY NEWLY REQUIRED PROCESS-LEVEL DETAIL WARRANTS LEAVE TO AMEND—NOT DISMISSAL WITH PREJUDICE

Without waiving Plaintiff's position that Section 638.50(b) contains no technological-incapability element, if the Court nevertheless imposes an affirmative pleading requirement that Plaintiff identify a particular tracker, script, or data-collection operation and expressly allege that it lacks content-recording capability, Plaintiff requests leave to add that process-level technical detail. That incapability theory was not the governing pleading rule under *Greenley*, *Shah*, or *Meta Pixel*, and the Court's supplemental order has now focused the issue with greater specificity.

Amendment would not be futile: the FAC already alleges extensive forensic testing and numerous distinct tracking processes. Plaintiff should be permitted to plead additional tracker- and

operation-specific technical facts to the extent supported by that investigation. See *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–53 (9th Cir. 2003) (per curiam). Dismissal with prejudice is therefore unwarranted.

## VII. CONCLUSION

The Court should deny Defendant's motion to dismiss Plaintiff's Section 638.51 claim. Only if the Court nevertheless imposes a technological-incapability requirement and concludes that greater process-specific facts are necessary should Plaintiff be granted leave to amend.

Dated: August 20, 2026

**POTTER HANDY, LLP**

By: _/s/ James M. Treglio__________
James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff